UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Banc of America Leasing & Capital, LLC,

   Plaintiff,

v.                     Civil No. 09-1277 (JNE/AJB)
                       ORDER

Walker Aircraft, LLC; JLT Aircraft
Holding Company, LLC; JLT
Group, Inc.; and Gerald L. Trooien,

   Defendants.

---

Kathryn J. Bergstrom, Esq., and Bryan M. Seiler, Esq., Gray, Plant, Mooty, Mooty & Bennett, P.A., appeared for Plaintiff Banc of America Leasing & Capital, LLC.

George G. Eck, Esq., and Jonathan D. Wilson, Esq., Dorsey & Whitney LLP, appeared for Defendants Walker Aircraft, LLC; JLT Aircraft Holding Company, LLC; JLT Group, Inc.; and Gerald L. Trooien.

---

This case is before the Court on the motion of Banc of America Leasing & Capital, LLC (BOA), for summary judgment on its breach of contract claims against Walker Aircraft, LLC; JLT Aircraft Holding Company, LLC; JLT Group, Inc.; and Gerald L. Trooien (collectively, Defendants). For the reasons set forth below, the Court grants the motion.

## I. BACKGROUND

In February 2001, BOA and JLT Aircraft Holding Company (JLT Aircraft) entered into a loan and security agreement in which BOA loaned JLT Aircraft $17,700,000 to purchase a Gulfstream aircraft and JLT Aircraft executed a promissory note in favor of BOA.[1] Pursuant to that agreement, JLT Aircraft granted BOA a first priority security interest in the Gulfstream. In

---

[1] JLT Aircraft entered into the Gulfstream loan agreement with Fleet Capital Corporation, BOA's predecessor in interest.

1

December 2007, BOA and Walker Aircraft entered into a loan and security agreement in which BOA loaned Walker Aircraft $9,000,000 to purchase a Falcon aircraft and Walker Aircraft executed a promissory note in favor of BOA. Pursuant to that agreement, Walker Aircraft granted BOA a first priority security interest in the Falcon.

Trooien and JLT Group guaranteed JLT Aircraft's obligations under the Gulfstream loan agreement and Walker Aircraft's obligations under the Falcon loan agreement. The guaranties provided that the guarantors would be jointly and severally liable with "each other party that may be liable" for the obligations under the loan agreements. The loan agreements contain acceleration clauses providing for acceleration of the loans if any of the enumerated "Events of Default" occur and are continuing, and the promissory notes contain acceleration clauses providing for acceleration of the loans if an Event of Default occurs or if Defendants fail to pay the note or any installment when due.

On April 5, 2009, JLT Aircraft failed to make a principal and interest payment to BOA on the Gulfstream loan. On April 25, 2009, Walker Aircraft failed to make a principal and interest payment to BOA on the Falcon loan. BOA sent cure notices to Defendants on May 15, 2009, which stated BOA's intent to accelerate the loans if it did not receive payment of all amounts due by May 29, 2009. To date, the defaults have not been cured.

BOA filed suit on June 1, 2009, alleging breach of contract and seeking replevin of the Gulfstream and Falcon (collectively, Aircraft). Defendants answered denying only that BOA was entitled to accelerate the loans and that BOA was entitled to repossess the Aircraft. BOA moved for replevin on July 14, 2009. Defendants did not oppose the motion, and the Court ordered replevin on August 28, 2009. BOA is presently in possession of the Aircraft. BOA now moves for summary judgment on its breach of contract claims.

## II. DISCUSSION

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies its burden, the nonmovant must respond by submitting evidentiary materials that "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Here, Defendants do not dispute that they are in default on the loans. Defendants contend, however, that the acceleration clauses are unenforceable and that judgment may not be entered in favor of BOA because BOA has possession of the Aircraft. Defendants also contend that there is an issue of fact as to the amounts owed under the loan agreements.

### A. Enforceability of the acceleration clauses

The parties dispute whether New York or Rhode Island law applies to the acceleration clauses.[2] Because the result is the same under New York or Rhode Island law, the Court need

---

[2] Defendants contend that New York law applies; BOA contends that Rhode Island law applies. The Gulfstream loan documents contain Rhode Island choice-of-law provisions. The Falcon loan agreement includes a Rhode Island choice-of-law provision, but the Falcon promissory note and guaranties include New York choice-of-law provisions. Although BOA cited Minnesota law in its opening brief, neither party appears to contend that Minnesota law applies to the loan agreements, and the Court does not consider Minnesota law.

3

not conduct a choice-of-law analysis. *See Sheng v. Starkey Labs., Inc.*, 117 F.3d 1081, 1083 n.1 (8th Cir. 1997).

As a general rule, "[a]cceleration clauses are considered valid when used in a mortgage or security agreement." 22 Am. Jur. 2d *Damages* § 517 (2009); *see also Rattigan v. Commodore Int'l Ltd.*, 739 F. Supp. 167, 171 (S.D.N.Y. 1990); *Indus. Nat'l Bank of R.I. v. Stuard*, 318 A.2d 452, 453-54 (R.I. 1974). Defendants, however, contend that the acceleration clauses are unenforceable under New York law.

Whether an acceleration clause is an enforceable provision or an unenforceable penalty is a matter of law to be decided by the court. *Rattigan*, 739 F. Supp. at 169. If a clause is intended by the parties to operate in lieu of damages, it is enforceable; if it is intended to operate as a means to compel performance, it is an unenforceable penalty. *Id.* An acceleration clause is penal "if it can be triggered for any breach of the contract's terms, whether serious or trivial, because under such a contract the amount lost by the breaching party for non-compliance with a minor term is disproportionate to any harm that would accrue to the non-breaching party." *Id.* at 171. Here, Defendants do not identify which of the Events of Default are trivial. Moreover, the enumeration of specific events of default that could trigger acceleration "illustrate[s] that the provision is not triggered by a breach of simply any term in the . . . agreement, but rather by conditions agreed upon ahead of time by the parties as constituting material changes." *Id.* By requiring payment of the outstanding principal, interest, late fees, and pre-payment charges upon an Event of Default, the acceleration clauses are not penal, but rather compensate BOA for the remaining balance of the loan. Therefore, the acceleration clauses are enforceable.[3]

---

[3] Defendants also maintain that acceleration is unconscionable because BOA knew or should have known that Defendants planned to lease the Aircraft and apply the lease proceeds to their obligations under the loans, Defendants diligently made loan payments for several years,

4

Defendants next argue that the acceleration clauses are unenforceable to the extent BOA's calculations include "unearned interest." New York law prohibits a lender from collecting unearned interest. *See Bostwick-Westbury Corp. v. Commercial Trading Co.*, 404 N.Y.S.2d 968, 972 (N.Y. Civ. Ct. 1978). The issue of unearned interest arises when total interest is calculated in advance and added in equal proportions to the installment payment. *See id.* Defendants do not identify any unearned interest in the amounts BOA contends are owed. Further, as set forth below with respect to the amounts owed, the pre-default and post-default interest are calculated based on the principal owed at the time of default. Consequently, New York's prohibition against collecting unearned interest pursuant to an acceleration clause does not apply here.

Finally, Defendants contend that the acceleration clauses are unenforceable because they permit recovery of the full amounts owed under the loans in addition to the value of the Aircraft. Section 7.2 of the loan agreements provides that if an Event of Default occurs and is continuing, BOA "may exercise all rights and remedies of a secured party under the UCC." Section 8.1 states that BOA's remedies are cumulative and may be exercised simultaneously. The New York and Rhode Island enactments of the Uniform Commercial Code (UCC) provide that a secured party may take possession of the collateral.[4] N.Y. U.C.C. Law § 9-609(a)(1) (2002); R.I. Gen. Laws Ann. § 6A-9-609(a)(1) (2008). They further provide that a secured party may reduce

---

Defendants only stopped making loan payments after they stopped receiving lease payments for use of the Aircraft from their customers, and Trooien personally made loan payments for six months before defaulting. Although these facts support Defendants' good faith, they do not provide a legal basis for finding the acceleration clauses unenforceable.

[4] New York's and Rhode Island's most recent enactments of UCC Article 9, which applies to secured transactions, provide that they apply to a transaction or lien within their scope, even if the transaction or lien was entered into or created before the enactment took effect. N.Y. U.C.C. Law § 9-702(a); R.I. Gen. Laws Ann. § 6A-9-702(a).

5

a claim to judgment, foreclose, or otherwise enforce the claim or security interest, and that the rights of a secured party "are cumulative and may be exercised simultaneously." N.Y. U.C.C. Law § 9-601(a)(1), (c); R.I. Gen. Laws Ann. § 6A-9-601(a)(1), (c). These provisions permit a secured party to obtain a money judgment for the full amount due even though the secured party is in possession of the collateral. *See Ctr. Capital Corp. v. Marlin Air, Inc.*, No. 07-15128, 2008 WL 937491, at *3-5 (E.D. Mich. Apr. 7, 2008) (finding plaintiff lender entitled under Michigan enactment of UCC to money judgment for full amount due under loan while simultaneously repossessing aircraft securing loan); *Okefenokee Aircraft v. Primesouth Bank*, 676 S.E.2d 394, 396-97 (Ga. Ct. App. 2009) (finding plaintiff bank entitled under Georgia enactment of UCC and loan documents to money judgment for full amount owed on note while remaining in possession of aircraft securing note); *see also* 68A Am. Jur. 2d *Secured Transactions* § 532 (2009) (explaining UCC allows a secured creditor to "repossess the collateral for the purpose of protecting it and concurrently proceed to enforce the debt," to "sell the collateral and then obtain a judgment on the note of the debtor for any deficiency," or to "sue on the debt and proceed to repossess and sell the collateral") (footnotes and citations omitted). In short, the UCC and loan agreements expressly permit BOA to obtain a money judgment for the full amounts due on the loans even though BOA is in possession of the Aircraft.

Defendants contend this result is unconscionable because it amounts to double recovery. The UCC, however, requires BOA to dispose of the collateral in a commercially reasonable manner and apply the proceeds of the disposition to the amounts owed by Defendants. *See* N.Y. U.C.C. Law §§ 9-608, 9-610; R.I. Gen. Laws §§ 6A-9-608, 6A-9-610. This requirement prevents double recovery by BOA. *See* 68A Am. Jur. 2d *Secured Transactions* § 534 ("The possibility, in such instance, of the creditor's double recovery on the debt by thereafter

proceeding against the collateral for the same debt, is prevented by the requirements that the creditor proceed in a commercially reasonable manner and account to the defendant for the proceeds of the sale of the collateral."). Consequently, the acceleration clauses are not unenforceable as unconscionable.

**B.     Timeliness of BOA's motion**

Defendants next argue that BOA's motion is premature on the ground that Section 7.2 of the loan agreements requires BOA to first dispose of the Aircraft and determine if there is a deficiency before seeking judgment against Defendants. Contract interpretation is a question of law for the Court. *Haydon v. Stamas*, 900 A.2d 1104, 1110 (R.I. 2006); *Snug Harbor Square Venture v. Never Home Laundry, Inc.*, 675 N.Y.S.2d 365, 366 (N.Y. App. Div. 1998). The Court must view the contract in its entirety and assign its terms their plain and ordinary meanings as the manifestation of the parties' intent. *Haydon*, 900 A.2d at 1110; *see Snug Harbor*, 675 N.Y.S.2d at 366. If the contract terms are clear and unambiguous, they will be applied as written. *Haydon*, 900 A.2d at 1110-11; *Tozzi v. Long Island R. Co.*, 651 N.Y.S.2d 270, 274 (N.Y. Sup. Ct. 1996). A court may grant summary judgment when the terms of the contract are unambiguous. *See Sea Fare's Am. Cafe, Inc. v. Brick Mkt. Place Assocs.*, 787 A.2d 472, 476 (R.I. 2001); *Lake Constr. & Dev. Corp. v. City of New York*, 621 N.Y.S.2d 337, 338 (N.Y. App. Div. 1995).

Section 7.2 states: "Customer shall be liable for any deficiency if the proceeds of any sale or disposition of the Collateral are insufficient to pay all amounts to which Lender is entitled hereunder." Read together with the rest of the loan documents, this language does not require BOA to dispose of the Aircraft before seeking a money judgment against Defendants for the full amounts due on the loans. Section 7, which describes the remedies available to BOA,

7

unambiguously provides that if an Event of Default occurs, BOA may accelerate the loans, is entitled to pursue all rights and remedies of a secured party under the UCC or any other applicable law, may repossess the Aircraft, may "collect, receive, appropriate and realize upon the Collateral . . . and/or may sell, lease, assign, give options to purchase or otherwise dispose of the Collateral," and shall apply the net proceeds of any such realization to Defendants' obligations under the loans. As previously stated, Section 8 provides for the cumulative and simultaneous exercise of all remedies available to BOA. When viewed in this context, Section 7.2 does not limit BOA's remedies, but merely establishes that Defendants are liable for any deficiency remaining should BOA repossess the Aircraft and subsequently apply any proceeds from their disposal to Defendants' obligations. *See Ctr. Capital Corp.*, 2008 WL 937491, at *3-5. Accordingly, the loan agreements unambiguously provide that BOA is entitled to a money judgment against Defendants for the full amounts due without establishing a deficiency. BOA's motion for summary judgment on its breach of contract claims is not premature.

**C.     Amounts owed**

BOA submits two affidavits to establish the amounts owed under the loan agreements. The affidavit of Brian McConaghy, a vice-president of BOA, states Defendants owe the following amounts in principal and pre-default interest on the Aircraft:

|  | **Gulfstream** | **Falcon** |
|---|---|---|
| **Principal** | $12,672,174.22 | $8,520,824.82 |
| **Pre-Default Interest** | $62,516.10 | $38,272.80 |

The affidavit of Kathryn J. Bergstrom, counsel for BOA, states that as of August 18, 2009, Defendants owed the following amounts in post-default interest, pre-payment fees, and late fees.

|                       | **Gulfstream** | **Falcon**   |
|-----------------------|---------------|--------------|
| **Post-Default Interest** | $842,699.59   | $481,426.60  |
| **Pre-Payment Fees**      | $190,082.61   | $127,812.37  |
| **Late Fees**             | $31,027.56    | $14,275.52   |

Defendants maintain that there is an issue of fact as to the amounts owed because BOA has not produced authenticated financial records, expert testimony, or "defensible calculations" in support of its figures. Defendants contend that they are entitled to examine BOA's supporting documents, analyze its calculations, and depose its expert and lay witnesses. Defendants do not cite any support for the contention that expert testimony or depositions are required for what should be a simple calculation based on the loan documents, nor do they challenge the amount of principal due as of the date of default.

The promissory notes state that pre-default interest is calculated at an annual rate of 5.39% for the Falcon and 5.92% for the Gulfstream for 30 days following the due date of the missed payment. Post-default interest is calculated at a rate of 1.5% per month multiplied by the amount of principal due beginning 30 days after the due date of the missed payment, or $6,336.09/day for the Gulfstream and $4,260.41/day for the Falcon. The loan documents also provide for monthly late fees of 5% of the pre-default monthly payment for the Aircraft and state a pre-default monthly payment of $124,110.23 for the Gulfstream and $71,377.60 for the Falcon. This amounts to a monthly late fee of $6,205.51 for the Gulfstream and $3,568.88 for the Falcon, where the month begins on the 5th day for the Gulfstream and the 25th day for the Falcon. Based on these provisions, the Court's calculations of the pre-default interest, post-default interest, and late fees agree with those submitted by BOA.

BOA's calculations as to the pre-payment fees, however, do not agree with the pre-payment provisions in the promissory notes. BOA contends that the pre-payment fees are 1.5%

of the principal owed at the time of default, but the fourth paragraph in the promissory notes provides as follows:

> The entire unpaid principal balance of this Note may be prepaid in full . . . provided that any such prepayment shall be made together with (a) all accrued interest and other charges owing hereunder or under the Security Agreement and (b) a prepayment fee equal to: 1% of such prepayment if made prior to the first anniversary of this Note; thereafter, .5% of such prepayment if made prior to the third anniversary of this Note; thereafter, no prepayment fee shall be required . . . .

Accordingly, the pre-payment fee is $0 (0% multiplied by $12,672,174.22) for the Gulfstream, which was purchased in February 2001, and $42,604.12 (0.5% multiplied by $8,520,824.82) for the Falcon, which was purchased in December 2007.

Defendants have not shown a genuine issue of material fact that as of August 18, 2009, the following amounts were owed on the Aircraft:

|  | **Gulfstream** | **Falcon** |
|---|---|---|
| **Principal** | $12,672,174.22 | $8,520,824.82 |
| **Pre-Default Interest** | $62,516.10 | $38,272.80 |
| **Post-Default Interest** | $842,699.59 | $481,426.60 |
| **Pre-Payment Fees** | $0.00 | $42,604.12 |
| **Late Fees** | $31,027.56 | $14,275.52 |
| **Total** | $13,608,417.47 | $9,097,403.86 |

Accordingly, BOA is entitled to summary judgment that JLT Aircraft, JLT Group, and Trooien are jointly and severally liable in the amount of $13,608,417.47 for their obligations under the Gulfstream agreement, and for an additional $6,336.09/day in post-default interest for each day after August 18, 2009, and $6,205.51/month in late fees beginning on September 5, 2009. BOA is also entitled to summary judgment that Walker Aircraft, JLT Group, and Trooien are jointly and severally liable in the amount of $9,097,403.86 for their obligations under the

Falcon agreement, and for an additional $4,260.41/day in post-default interest for each day after August 18, 2009, and $3,568.88/month in late fees beginning on August 25, 2009.[5]

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Banc of America Leasing & Capital's Motion for Summary Judgment [Docket No. 12] is GRANTED.

2. JLT Aircraft, JLT Group, and Trooien are jointly and severally liable in the amount of $13,608,417.47 for their obligations under the Gulfstream loan agreement, plus interest of $6,336.09/day for each day after August 18, 2009, and late fees of $6,205.51/month beginning on September 5, 2009, until payment is made.

3. Walker Aircraft, JLT Group, and Trooien are jointly and severally liable in the amount of $9,097,403.86 for their obligations under the Falcon loan agreement, plus interest of $4,260.41/day for each day after August 18, 2009, and late fees of $3,568.88/month beginning on August 25, 2009, until payment is made.

Dated: October 9, 2009

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge

---

[5] BOA states in its motion papers that it will seek costs and fees under the loan agreements at a later date.